IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

SPARTANBURG DIVISION

| | |
|---|---|
| THI of South Carolina at Magnolia Manor–Inman, LLC D/B/A Magnolia Manor-Inman,<br><br>      Plaintiff,<br><br>vs.<br><br>Eddie M. Gilbert, Individually and as Personal Representative of the Estate of Gertrude F. Gilbert,<br><br>      Defendant. | Civil Action No. 7:13-cv-2929-BHH<br><br>**REPORT OF MAGISTRATE JUDGE** |

This matter is before the court on the plaintiff's motion to compel arbitration and stay court proceedings (doc. 17). The Honorable Bruce H. Hendricks, United States District Judge, referred[1] the motion to the undersigned on August 21, 2014 (doc. 49). A hearing on the motion was held on October 22, 2014. Based upon the arguments and evidence presented by counsel at the hearing and in their memoranda, this court recommends that the motion to compel arbitration be granted in part and denied in part for the reasons set forth below.

## BACKGROUND

This is a diversity action by which the plaintiff Magnolia Manor-Inman seeks to compel arbitration of a dispute with defendant Eddie Gilbert ("Mr. Gilbert"), who is the personal representative of the estate of his deceased mother, Gertrude Gilbert ("Ms. Gilbert"). The dispute between the plaintiff and Mr. Gilbert relates to the care Ms. Gilbert

---

[1]Judge Hendricks' order (doc. 49) stated that the referral was for the undersigned to enter an order on the motion. However, as the resolution of the motion will be dispositive of the issues in this action, a report and recommendation has been prepared for Judge Hendricks' consideration.

allegedly received while she was a resident of Magnolia Manor-Inman, which is a skilled nursing facility in Inman, South Carolina.

At the time of her admission to Magnolia Manor-Inman in January 2004, Ms. Gilbert was under the legal custody of the Spartanburg County Adult Protective Services ("APS"), a division of the Department of Social Services ("DSS"). Ms. Gilbert was placed under such custody in July 1999 upon court order deeming her to be a "vulnerable adult" as defined by S.C. Code Ann. § 43-35-10(11) (doc. 36-1, Buckner decl., ex. E, family court orders). She remained in custody of DSS for nearly 13 years until March 2012 (doc. 17-5, family court order).

As part of the fiduciary responsibilities imposed upon APS by South Carolina law, Ms. Gilbert was to be admitted to a skilled nursing facility of suitable placement. *See* S.C. Code Ann. § 43-35-10(9). Pursuant to those legal obligations imposed upon APS for the care and custody of Ms. Gilbert, she was admitted as a resident of Magnolia Manor-Inman on January 8, 2004. On that day, Phebe Crosland ("Ms. Crosland"), an employee of DSS, executed an Admission Contract to obtain care for Ms. Gilbert at Magnolia Manor-Inman (doc. 17-2, Stanton decl. ¶ 3). The Admission Contract recites that it was executed "by and among" Magnolia Manor-Inman, Gertrude Gilbert ('Patient/Resident'), and "APS" ('Fiduciary Party')" (doc. 17-3, Admission Contract at p. 1). Pursuant to express provisions of the Admission Contract, Ms. Crosland, on behalf of Ms. Gilbert, represented that she voluntarily consented to all terms set forth in the contract and that she possessed authority to act on behalf of Ms. Gilbert for all purposes permitted by South Carolina law (*id.* at pp. 1, 5). The Admission Contract includes an Arbitration Provision, which states as follows:

> VI. ARBITRATION
>
> Pursuant to the Federal Arbitration Act, any action, dispute, claim or controversy of any kind (e.g., whether in contract or in tort, statutory or common law, legal or equitable or otherwise) now existing or hereafter arising between the parties in any way arising out of, pertaining to or in connection with the provision of health care services, any agreement between the parties, the provision of any agreements of any kind whatsoever, any past, present or future incidents, omissions, acts, errors, practices or occurrence causing injury to either party whereby the other party or its agents, employees or representatives may be liable, in whole or in part, or any other aspect of the past, present or future relationships between the parties shall be resolved by binding arbitration administered by the National Health Lawyers Association (the "NHLA").
>
> **THE UNDERSIGNED ACKNOWLEDGE THAT EACH OF THEM HAS READ AND UNDERSTOOD THIS CONTRACT, AND THAT EACH OF THEM VOLUNTARILY CONSENTS TO ALL OF ITS TERMS**

(*Id.* at p. 4) (bold in original). The National Health Lawyers Association ("NHLA") is now known as the American Health Lawyers Association ("AHLA").

Following Ms. Gilbert's death on September 14, 2012, and acting in his capacity as personal representative of her estate, Mr. Gilbert filed the statutorily required notice of intent to file suit (wrongful death/ survival action) against the plaintiff and several other parties in state court on February 28, 2013 (doc. 27-1, notice of intent). *See* S.C. Code Ann. § 15-79-125. In the notice of intent, the defendant requested that the plaintiff produce any alleged arbitration clause, but he received no response. On June 10, 2013, before the mandatory pre-suit mediation, the defendant inquired about any alleged arbitration agreement, but he did not receive a response (doc. 27-2, 6/10/13 email). The defendant filed a summons and complaint in state court on July 8, 2013, against the plaintiff, alleging causes of action for negligence, recklessness, and gross negligence; negligence per se; and breach of fiduciary duty(doc. 17-4, *Gilbert v. THI of South Carolina at Magnolia Manor-Inman, LLC*, C.A. No. 2013-CP-42-2754 comp.). The causes of action set forth in

3

the state court action arise from and pertain to the care and treatment provided to Ms. Gilbert was she was a resident of Magnolia Manor-Inman. On August 15, 2013, the plaintiff herein filed an answer in the state court case raising the Arbitration Provision as an affirmative defense (doc. 36-1, Buckner decl., ex. A, answer ¶¶ 37-38).  At the same time, the plaintiff filed a motion to stay proceedings in the state court matter, stating that it would soon file an action in federal court to determine the validity of an arbitration agreement and to compel the dispute to arbitration (*id.*, ex. B, m. to stay).

On October 25, 2013, the plaintiff filed the complaint in this case seeking to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 4 (doc. 1). The plaintiff also seeks to have the state court matter stayed pending resolution of this matter through the arbitration process (*id.*).

## APPLICABLE LAW AND ANALYSIS

Under the Federal Arbitration Act ("FAA"), a party may invoke a federal district court's authority to enforce an arbitration agreement by compelling other parties to arbitrate the dispute.  9 U.S.C. § 4. In *Adkins v. Labor Ready, Inc.,* 303 F.3d 496 (4th Cir. 2002), the Fourth Circuit Court of Appeals noted the FAA's liberal federal policy favoring arbitration agreements.  The court stated:

> The FAA requires a court to stay "any suit or proceeding" pending arbitration of "any issue referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. § 3. This stay-of-litigation provision is mandatory. A district court therefore has no choice but to grant a motion to compel arbitration where a valid arbitration agreement exists and the issues in a case fall within its purview.

*Id.* at 500 (quoting *United States v. Bankers Ins. Co.*, 245 F.3d 315, 319 (4th Cir. 2001)). The court further stated:

> In the Fourth Circuit, a litigant can compel arbitration under the FAA if he can demonstrate "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the

4

> relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute."

*Id.* at 500-501 (quoting *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991)).

Here, only the second requirement is in dispute.[2] The Arbitration Provision states, *inter alia*, that "any action, dispute, claim or controversy of any kind (e.g., whether in contract or in tort, statutory or common law, legal or equitable or otherwise) now existing or hereafter arising between the parties in any way arising out of, pertaining to or in connection with the provision of health care services [to Ms. Gilbert]," must be submitted to arbitration (doc. 17-3, Admission Contract at p. 5). As noted above, all of the claims that Mr. Gilbert has asserted against Magnolia Manor-Inman in the state court action are predicated on allegedly deficient care and treatment that Ms. Gilbert received while she was a resident at Magnolia Manor-Inman.

The plaintiff argues that Ms. Gilbert was the intended third party beneficiary of the Admission Contract, and thus she was bound by the Arbitration Provision, and it remains binding on her estate.[3] Under South Carolina law, "[a] third-party beneficiary is a party that the contracting parties intend to directly benefit." *Helms Realty, Inc. v. Gibson-Wall Co.*, 611 S.E.2d 485, 488 (S.C. 2005). As argued by the plaintiff, there is no question that Ms. Gilbert was the intended third-party beneficiary of the Admissions Contract, which includes the Arbitration Provision, as she was specifically identified as the resident to be admitted to the facility. Furthermore, under South Carolina law, "a personal representative of a decedent domiciled in this State at his death has the same standing to

---

[2]At the hearing, the defendant conceded that the admission contract evidences a transaction involving interstate commerce.

[3]As the undersigned finds that Ms. Gilbert (and now her estate) was bound by the Arbitration Provision as third-party beneficiary and under the doctrine of equitable estoppel, the plaintiff's argument that Ms. Crosland had statutory authority and apparent authority to bind Ms. Gilbert to the Arbitration Provision will not be addressed.

5

sue and be sued in the courts of this State and the courts of any other jurisdiction as his decedent had immediately prior to death." S.C. Code Ann. § 62–3–703. Accordingly, the defendant is bound in his capacity as personal representative of Ms. Gilbert's estate if Ms. Gilbert would have been bound immediately prior to her death.  In recent arbitration enforcement cases, two judges of this court have applied the third-party beneficiary doctrine to order estate representatives, like Mr. Gilbert, to arbitrate wrongful death and related tort claims because their decedents were third-party beneficiaries of nursing home contracts with arbitration clauses. *See McCutcheon v. THI of S.C. at Charleston, LLC*, No. 2:11-CV-02861-DCN, 2011 WL 6318575, at *3 (D.S.C. Dec. 15, 2011) ("Carmela McCutcheon's care was the essential purpose of the agreement, as she is named in both the Arbitration Agreement and the Admissions Agreement as the resident to be admitted into the facility. Further, the terms of both agreements refer to the rights and obligations of Carmela McCutcheon as resident of the facility, and Driftwood as the caregiver. As such, Carmela McCutcheon was an intended beneficiary to the contract, and the court finds that the arbitration provision was binding on her and remains binding on her estate."); *THI of S.C. at Columbia, LLC v. Wiggins*, C/A No. 3:11-888-CMC, 2011 WL 4089435, at *6 (D.S.C. Sept. 13, 2011) ("Hall's care was the essential purpose of the Contract. Thus, Hall was an intended third-party beneficiary of the Contract which was signed by Wiggins in her capacity as an immediate family member. It follows that Hall was bound by the Arbitration Provision immediately prior to his death and, consequently, that it remains binding on his estate.") (citations omitted).  Likewise, here, the Arbitration Provision is binding on the defendant.

Alternatively, the plaintiff argues that the defendant should be equitably estopped from denying that Ms. Crosland had the authority to bind Ms. Gilbert.  This court agrees.   As stated by the Honorable Cameron McGowan Currie, (now) Senior United States District Judge, in *Wiggins*:

6

> After execution of the Contract, Hall became a resident of Magnolia Manor and, for an extended period of time, received the benefits provided for in the Contract. Under these circumstances, where the entity operating Magnolia Manor performed in reliance on the terms of the Contract and Hall received the benefit of the Contract, it would be inequitable for Hall's estate (through its personal representative, Wiggins) to avoid the Contract's Arbitration Provision. *See Int'l Paper Co. v. Schwabedizzen Maschinen & Anlagen GMBH*, 206 F.3d 411, 417–18 (4th Cir.2000) (holding that to allow a party to "claim the benefit of the contract and simultaneously avoid its burdens would both disregard equity and contravene the purposes underlying enactment of the [FAA].").

*Wiggins*, 2011 WL 4089435, at *6. Likewise, here, having obtained for Ms. Gilbert the benefits of admission and treatment at Magnolia Manor-Inman pursuant to the Admission Contract, the defendant is estopped from denying the enforceability of the Arbitration Provision. Based upon the foregoing, the undersigned finds that the defendant is bound by the Admissions Contract and its Arbitration Provision.

The defendant argues that the Arbitration Provision is rendered invalid and unenforceable because it specifically states that the NHLA shall administer the arbitration, but the NHLA no longer exists and did not exist at the time of the contract's formation (doc. 27, def. resp. at pp. 19-24). Judge Currie rejected the same contention in *Wiggins*, 2011 WL 4089435, at *7. In July 1997, the NHLA and American Academy of Healthcare Attorneys merged into a single organization, which was renamed the AHLA. *See id.* "The NHLA still functions; it is simply now known as the AHLA." *THI of N.M. at Hobbs Ctr., LLC v. Spradlin*, 893 F. Supp. 2d 1172, 1189 (D.N.M. 2012) (citation omitted). Thus, "the merger of NHLA with another entity and adoption of a new (combined) name did not, alone, prevent a meeting of the minds which rendered the [Arbitration Provision] invalid." *Wiggins*, 2011 WL 4089435, at *7; *see also Spradlin*, 893 F. Supp. 2d at 1189 (following *Wiggins* in reaching the same conclusion). This reasoning compels the same conclusion here.

7

The defendant also argues that when the parties agreed to the Arbitration Provision, it was the AHLA's policy not to conduct arbitrations of consumer healthcare claims pursuant to pre-injury agreements (doc. 27, def. resp. at pp. 22-24). The defendant acknowledges that the AHLA later amended its Rules to permit the administration of pre-injury arbitral agreements pursuant to a court order, but he argues that the amended Rule was not in effect when the Admission Contract was signed in 2004, and thus, there was no "meeting of the minds" regarding the AHLA's designation as the arbitrator (*id.* at p. 23). Judge Currie rejected this argument as well in *Wiggins.* 2011 WL 4089435, at *8. Here, as in *Wiggins*, although the AHLA, unbeknownst to the parties, was unavailable at the time they agreed to arbitration, "the AHLA currently is available to hear [the defendant's] dispute." *Id.* (distinguishing *Grant v. Magnolia Manor-Greenwood, Inc.*, 678 S.E.2d 435 (S.C. 2009) on this ground). Furthermore, the AHLA Rules that were in place when the parties agreed to arbitration expressly provided:

> These rules may be amended or interpreted by the [AHLA] from time to time, which amendments or interpretations thereafter become binding upon the parties to an arbitration pursuant to these Rules or under the auspices of the [AHLA]. Any reference to these Rules shall be construed to refer to these Rules as amended and interpreted from time to time.

(Doc. 27-33, AHLA Rules 2003, § 7.06). On June 9, 2014, the AHLA confirmed for the plaintiff's counsel that, under its current Rules, the AHLA will continue to administer arbitrations of consumer healthcare claims under pre-injury agreements pursuant to a court order even if the parties' agreement does not comply with the special presentation and notice requirements of Rule 11.5 of the AHLA's Rules of Procedure for Arbitration (doc. 36-1, Buckner decl. ¶ 9, ex. H, 6/9/14 letter). Accordingly, the AHLA is available to act as the arbitrator in this case, and the defendant's argument fails.

The defendant further argues that the plaintiff has waived its right to enforce the Arbitration Provision through its bad fath actions and unjustifiable delays (doc. 27, def.

resp. at pp. 3-6). The defendant bears a "heavy burden" to prove waiver. *See Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 95 (4th Cir. 1996). A party forfeits its right to arbitrate only if it "so substantially utilize[s] the litigation machinery that to subsequently permit arbitration would prejudice" the opposing party. *Maxum Found., Inc. v. Salus Corp.*, 779 F.2d 974, 981 (4th Cir. 1985).

The crux of the defendant's waiver theory is that the plaintiff "waited a full ten months" to file its arbitration petition in this court on October 25, 2013, after the defendant filed his notice of intent to file suit ("NOI") in state court on February 28, 2013 (doc. 27, def. resp. at p. 5). The defendant contends that the plaintiff's delay in moving to compel arbitration is measured from the defendant's filing of the NOI rather than the filing of his state court complaint (*id.*). However, as argued by the plaintiff, the defendant's NOI was a *prerequisite* to commencing the state court action. *See* S.C. Code Ann. § 15-79-125(A) ("Prior to filing or initiating a civil action alleging injury or death as a result of medical malpractice, the plaintiff shall [] file a Notice of Intent to File Suit . . . .").[4] In *Gadberry v. Rental Servs. Corp.*, Judge Currie rejected a similar waiver theory in an employment context because the "general rule [is] that a party is under no obligation to make a pre-suit demand for arbitration." C.A. No. 0:09-3327-CMC-PJG, 2011 WL 766991, at *3-4 (D.S.C. Feb. 24, 2011). Furthermore, the state court action actually commenced when the defendant filed

---

[4] At the hearing, defense counsel cited several cases from the Supreme Court of South Carolina that he argued supported the position that the NOI commenced the state court action. After reviewing the cited cases, the court is not persuaded that the waiver issue should be measured from the filing of the NOI. *See Wilkinson v. East Cooper Cmty. Hosp., Inc.*, App. Case No. 2012-213464, 2014 WL 4935934 (Oct. 3, 2014); *Brouwer v. Sisters of Charity Providence Hosp.*, 763 S.E.2d 200 (S.C. 2014); *Ranucci v. Crain*, 763 S.E.2d 189 (S.C. 2014); *Dawkins v. Union Hosp. Dist.*, 758 S.E.2d 501 (S.C. 2014); *Ross v. Waccamaw Cmty. Hosp.*, 744 S.E.2d 547 (2013); and *Grier v. AMISUB of South Carolina, Inc.*, 725 S.E.2d 693 (S.C. 2012).

his complaint on July 8, 2013 (doc. 17-4, state court comp.).[5]  See Rule 3(a), SCRCP ("A civil action is commenced when the summons and complaint are filed with the clerk of court . . ."). On August 15, 2013, the plaintiff filed an answer in the state court case raising the Arbitration Provision as an affirmative defense (doc. 36-1, Buckner decl., ex. A, answer ¶¶ 37-38).  At the same time, the plaintiff filed a motion to stay proceedings in the state court matter, stating that it would soon file an action in federal court to determine the validity of an arbitration agreement and to compel the dispute to arbitration (*id.*, ex. B, m. to stay). The plaintiff then filed the complaint to compel arbitration in this action on October 25, 2013, a little over three months after the complaint in the state action was filed.  In the absence of any prejudice to the defendant, which the defendant has not shown, the undersigned finds that the plaintiff did not waive the right to arbitration by being unjustifiably slow in seeking arbitration.

Next, the defendant argues that the Arbitration Provision is procedurally unconscionable due to the following: (1) there is no evidence that the plaintiff explained the Arbitration Provision to Ms. Crosland; (2) the provision is "buried" in the Admission Contract; and (3) the plaintiff did not give the defendant a copy of the AHLA's rules so that he could evaluate them  (doc. 27, def. resp. at pp. 24-28).

The defendant has failed to point to any authority that would impose a duty on the plaintiff to explain the Arbitration Provision to Ms. Crosland (*see id.* at p. 26). Therefore, this alleged lack of explanation is not sufficient to call into question the existence of an arbitration agreement. *See Munoz v. Green Tree Fin. Corp.*, 542 S.E.2d 360, 365 (S.C. 2001) ("a person who can read is bound to read an agreement before signing it").

Further, the Arbitration Provision is not buried in the Admission Contract as the defendant suggests (doc. 27, def. resp. at p. 26).  In rejecting the same challenge to an

---

[5]The parties state that the state court action was filed on July 16, 2013, but the date-filed stamp on the complaint is July 8, 2013 (*see* doc. 17-4, state court comp.).

identical Arbitration Provision, the court in *Thompson v. THI of N.M. at Casa Arena Blanca, LLC,* noted that "[t]he [A]rbitration [P]rovision is plainly visible directly above the signature lines, is labeled 'ARBITRATION' in bold, capital letters, and is in the same font and type size as the other provision titles in the Admission Contract." No. CIV 05-1331 JB/LCS, 2006 WL 4061187, at *15 (D.N.M. Sept. 12, 2006); *see also THI of N.M. at Vida Encantada, LLC v. Archuleta*, No. Civ. 11-399 LH/ACT, 2013 WL 2387752, at *17 (D.N.M. Apr. 30, 2013) (rejecting a similar unconscionability challenge to an identical Arbitration Provision for the same reasons). The same is true here.

The defendant's contention that the Arbitration Provision is unconscionable because the plaintiff did not give *him* "a copy of the [AHLA's] rules so that he could evaluate them" (doc. 27, def. resp. at p. 26) also fails as a contract may be invalidated only if it was unconscionable "at the time it was made." S.C. Code Ann. § 36-2-302(1). The defendant had not shown that Ms. Crosland did not know or have—or that she requested, but was denied a copy of— the AHLA Rules when she made the agreement to arbitrate on behalf of Ms. Gilbert, or that the Rules otherwise were inaccessible to her.

Lastly, the defendant argues that the Arbitration Provision is substantively unconscionable due to the following: (1) the AHLA Rules are not designed to handle disputes by consumers of healthcare for the negligence of healthcare providers, the Rules provide for a higher standard of proof than the law requires for certain categories of damages, and the Rules do not provide for formal discovery; (2) the AHLA is biased against consumers because it is "made up of lawyers who would be likely to defend a case like this one"; and (3) the costs of arbitration before the AHLA would be prohibitively excessive (doc. 27, def. resp. at pp. 24-34).

The defendant's arguments that the Arbitration Provision is substantively unconscionable are without merit for the following reasons. First, Section 11 of the AHLA

11

Rules establishes procedures specifically tailored to provide added protections for consumers (doc. 36-1, Buckner decl. ¶ 8, AHLA Rules of Procedure for Arbitration § 11). The defendant cites an older version of the Rules that provided that incidental, consequential, and special damages may only be awarded upon clear and convincing evidence that a defendant is guilty of conduct evincing an intentional or reckless disregard for the rights of others (doc. 27, def. resp. at p. 29). However the current Rules, which apply to cases received by the AHLA on or after April 7, 2014, do not contain such a provision. Instead, AHLA Rule 7.5 provides that "[a]n arbitrator may award any relief authorized by contract or applicable law that appears to be fair under the circumstances, including specific performance of a contract" (doc. 36-1, Buckner decl. ¶ 8, ex. G, AHLA Rules of Procedure for Arbitration, Rule 7.5). Moreover, Rule 11.7(e) provides that, in consumer cases, "[t]he arbitrator must disregard any contract provision that . . . increase[s] the burden of proof required to prove liability . . . " (*id.*, Rule 11.7(e)). Third, with regard to discovery, AHLA Rule 5.5 provides that "[t]o promote speed and efficiency, the arbitrator, in his or her discretion, should permit discovery that is relevant to the claims and defenses at issue and is necessary for the fair resolution of a claim" (*id.*, Rule 5.5). As argued by the plaintiff, this Rule is not unconscionable simply because it streamlines the discovery process and, consequently, may not permit full-blown discovery that is available in judicial proceedings. *See Wallace v. Red Bull Distrib. Co.*, 958 F. Supp. 2d 811, 824 (N.D. Ohio 2013) ("[The U.S. Supreme Court has] explicitly rejected the argument that discovery restrictions in arbitration agreements are unconscionable.") (citing *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1747 (2011)). The defendant's argument ignores that "[a]lthough [discovery] procedures [in arbitration] may not be as extensive as in the federal courts, by agreeing to arbitrate, a party trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991).

The defendant also speculates that the AHLA is biased against plaintiffs because it is "made up of lawyers who would be likely to defend a case like this one" (doc. 27, def. resp. at p. 31). The defendant provides no evidence for his claim that the AHLA would be unable to provide a neutral and fair forum. *See Spradlin*, 893 F. Supp. 2d at 1187 (rejecting this argument on the same grounds); *see also Gilmer*, 500 U.S. at 30 (rejecting speculative claim that arbitration panels will be biased because "[w]e decline to indulge the presumption that the parties and arbitral body conducting the proceeding will be unable or unwilling to retain competent, conscientious and impartial arbitrators").

Finally, the defendant's contention that the cost of arbitration before the AHLA would be prohibitively expensive is belied by AHLA Rule 11.7(a), which requires the plaintiff to "pay the filing fee, the arbitrator's fees and expenses, and any other costs incurred by the AHLA to administer the arbitration . . ." (doc.36-1, Buckner decl. ¶ 8, ex. G, AHLA Rules of Procedure for Arbitration, Rule 11.7(a)). Accordingly, the undersigned finds that the Arbitration Provision is neither procedurally nor substantively unconscionable.

Based upon the foregoing, the defendant should be ordered to arbitrate his dispute against the plaintiff.

The plaintiff's request that this court stay the state court action should be denied. The plaintiff has not provided, nor has this court found, any binding authority specifically addressing whether a federal court should grant a stay of state court proceedings in conjunction with granting a motion to compel arbitration. *See Captain D's, LLC v. McClenathan*, No. Civ. A. 2:06-0261, 2006 WL 3409757, at *6 (S.D. W. Va. Nov. 27, 2006). The Anti–Injunction Act provides: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. "Any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed

in an orderly fashion to finally determine the controversy." *Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 297 (1970). Here, Section 3 of the FAA does not provide express authorization for a federal court to stay state court proceedings, *see* 9 U.S.C. § 3, "nor is this court persuaded that a stay of state court proceedings is necessary to aid its jurisdiction or to protect or effectuate its judgments." *THI of New Mexico at Hobbs Center, LLC. v. Patton*, Civ. No. 11-537LH/CG, 2012 WL 112216, at *23-24 (D.N.M. Jan. 3, 2012) (finding that none of the three exceptions to the Anti-Injunction Act applied to allow a federal court to stay a state court action pending arbitration). *See United Service Protection Corp. v. Lowe*, 354 F. Supp. 2d 651, 659 (S.D. W. Va. 2005) (same). As noted by the court in *Patton*, the state court is bound to follow the FAA just as this court is, and there is no reason to believe the state court will force the defendant to proceed with the claims against the plaintiff in contravention of the FAA and this order. *See Patton*, 2012 WL 112216, at *24. Accordingly, the plaintiff's motion should be denied to the extent it requests a stay of the state court action.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the plaintiff's motion (doc. 17) should be granted in part and denied in part. The defendant should be ordered to arbitrate his dispute against the plaintiff, and the request to stay the state court case should be denied. Furthermore, the instant case should be dismissed as the only issue before the court was whether to compel arbitration. *See Am. Heritage Life Ins. Co. v. Beasley*, 37 F. App'x 712, at *1 (5th Cir. 2002).

IT IS SO RECOMMENDED.

s/Kevin F. McDonald
United States Magistrate Judge

October 31, 2014
Greenville, South Carolina